# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHEN DISTRICT OF GEORGIA

| | |
|---|---|
| FLOORCOVERINGS INTERNATIONAL, LTD.<br>5390 Triangle Parkway, Suite 125<br>Norcross, GA 30092<br><br>    Plaintiff,<br><br>v.<br><br>Marvin Douglas Rhea<br>3212 NW County Road 1343<br>Blooming Grove, TX 76626<br><br>    Defendant. | :<br>:<br>: **Civil Action No.**<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## COMPLAINT

## PARTIES

1. Floorcoverings International, Ltd. ("FCI") is a Georgia corporation with its principal place of business located in Gwinnett County, Georgia, located at 5390 Triangle Parkway, Suite 125, Norcross, Georgia 30092 ("FCI's Headquarters").

2. Marvin Douglas Rhea ("Rhea") is an individual and resident of Texas, and upon information and belief residing at 9212 NW County Road 1343, Blooming Grove, TX 76626.

3. At all times referred to herein, FCI has engaged in business as the national franchisor of Floorcoverings International franchises, which offer soft and hard flooring products to certain customers. As of December 31, 2021, there were 206 Floorcoverings International franchisees operating in the United States and Canada.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the parties and subject matter pursuant to 28 U.S.C. §1332(a) in that the parties are citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of costs and interest.

5. Venue for this action is predicated upon 28 U.S.C. §1391(b) as FCI resides and does business in this judicial district, and a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

6. Jurisdiction and venue are proper in this judicial district pursuant to the mandatory forum and venue selection clause contained in Article XII(D) of the parties' Franchise Agreement (defined below).

7. Defendant received valuable and continuing services emanating from FCI's Headquarters in Georgia, including, but not limited to, training, assistance, and support throughout his relationship with FCI.

8. Defendant routinely interacted, corresponded, and communicated with individuals at FCI's Headquarters over the course of his relationship with FCI.

9. Defendant conducted ongoing communications with FCI employees at FCI's Headquarters.

10. Defendant received daily, weekly, and monthly reporting from FCI's Headquarters.

11. Defendant paid franchise fees directly to FCI Headquarters throughout his relationship with FCI.

12. For at least the foregoing reasons, Defendant is subject to personal jurisdiction in Georgia pursuant to the Georgia Long Arm Statute, O.C.G.A. § 9-10-91.

## BACKGROUND

### The Floor Coverings International System

13. FCI is the international franchisor of Floor Coverings International businesses (each, a "Franchised Business") and has offered franchises in the mobile retail floorcovering business since February 1998.

14. FCI owns the mark "Floor Coverings International," which was registered on June 19, 2001, on the Principal Register of the United States Patent and Trademark Office ("USPTO") at Registration No. 2,461,349. FCI also owns the

marks "Floor Coverings International/The Flooring Store at Your Door" and "FCI" which are registered on the USPTO's Principal Register of Trademarks at Nos. 2,635,911 and 2,449,016 respectively (collectively, the "Marks").

15. FCI franchisees are licensed to use the Marks to operate under FCI's business system pursuant to the terms and conditions of a FCI franchise agreement.

16. FCI franchisees are also licensed to use FCI's proprietary business system, policies, procedures and standards and specifications, all of which are disclosed to FCI franchisees in confidence.

## The Franchise Agreement

17. On November 5, 2019, FCI and Rhea entered into a franchise agreement (the "Franchise Agreement") pursuant to which Rhea was granted the right and undertook the obligation to operate a "Floor Coverings International" franchise (the "Franchised Business") in certain zip codes in Texas, as more fully set forth in the Franchise Agreement (the "Territory"). A true and correct copy of the Franchise Agreement is attached as Exhibit "A."

18. Pursuant to Article II of the Franchise Agreement, the term of the Franchise Agreement was ten years.

19. Pursuant to Article III(B)(1), Rhea was required to pay a continuing royalty fee in an amount equal to five percent of Gross Sales (as defined in the

Franchise Agreement) or a minimum of $1,250 per month in his first calendar year of operation, $2,083 in the second calendar year of operation, or $2,917 per month for each month thereafter, whichever is greater (the "Continuing Royalty").

20. Pursuant to Article III(E) of the Franchise Agreement, Rhea agreed to pay FCI interest at the rate of 1.5 percent per month or the maximum rate allowed by law, whichever is less, on all past due amounts due to FCI under the Franchise Agreement.

21. Pursuant to Article XI of the Franchise Agreement, Rhea agreed to indemnify and hold FCI harmless against, and to reimburse FCI for, all damages arising from Rhea's operation of the Franchised Business.

22. In addition. Article XII(G) of the Franchise Agreement provides that in the event of any judicial proceeding to enforce any term of the Franchise Agreement, the prevailing party is entitled to recover its costs and reasonable attorneys' fees incurred with such proceeding.

### Rhea's Defaults Under The Franchise Agreement and Abandonment of the Franchised Business

23. FCI has learned that Rhea sold both of his FCI vehicles and otherwise ceased operating the Franchised Business.

24. As a result of Rhea's abandonment of the Franchised Business, on August 3, 2022, FCI terminated the Franchise Agreement. A true and correct copy of the Notice of Termination is attached as Exhibit "B."

## FCI'S DAMAGES AS A RESULT OF RHEA'S BREACHES

25. At the time Rhea abandoned the Franchised Business, the required minimum monthly royalty payment was $2,917 per month.

26. As a direct and proximate result of Rhea's breach of the Franchise Agreement, FCI has been damaged in the amount of $253,779, which represents the future minimum monthly Continuing Royalty payments due under the Franchise Agreement from the date he abandoned the Franchised Business through the remainder of the term of the Franchise Agreement.

27. FCI made demand on Rhea for payment of the future minimum monthly Continuing Royalty payments due under the Franchise Agreement, but Rhea failed, and refused, to pay FCI such sums as due under the Franchise Agreement.

28. As a direct and proximate result of Rhea's breach of the Franchise Agreement, FCI has been damaged in the amount of $253,779.

## COUNT I

## BREACH OF CONTRACT

29. FCI incorporates by reference the averments set forth above as though the same were set forth at length herein.

30. FCI has performed all of its obligations under the Franchise Agreement.

31. Rhea has breached the Franchise Agreement by failing to operate the Franchised Business for the full term of the agreement, and by failing to pay the required minimum monthly Continuing Royalty payments to FCI for the balance of the term.

32. As a direct and proximate result of Rhea's breach, FCI has been damaged in the amount in the amount of $253,779.

## PRAYER FOR RELIEF

**WHEREFORE**, Floorcoverings International, Ltd. demands:

(a) Judgment against the Defendant in the amount of to be determined at trial but which exceeds $253,779, plus interest, costs, and attorneys' fees;

(b) Attorneys' fees and costs; and

(c) Such other relief as this Court deems just.

Dated: September 6, 2022

/s/  *J.A. Schneider*
J.A. Schneider
Georgia Bar No. 141437
Jonathan M. Nussbaum
Georgia Bar No. 162672

**THOMPSON HINE LLP**
Two Alliance Center
3560 Lenox Road, Suite 1600
Atlanta, Georgia 30326
Telephone: 404-541-2900
Facsimile:  404-541-2905
*ja.schneider@thompsonhine.com*
*jonathan.nussbaum@thompsonhine.com*